FILED

2018 Sep-06  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS E. REYNOLDS, as Trustee,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:18-cv-00514-ACA** |
| | ] | |
| **BEHRMAN CAPITAL IV L.P., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Plaintiff's motion to remand this case under 28 U.S.C. § 1447 or, in the alternative, to abstain or refer the case to the bankruptcy court.  (Doc. 26).  For the reasons set out below, the court **GRANTS IN PART** and **DENIES IN PART** the motion.

The court concludes that, under 28 U.S.C. § 1334(b), it has original jurisdiction over every claim in the complaint because each claim either arises under the Bankruptcy Code, or arises in or relates to a case under the Bankruptcy Code.  Having determined that the court has original jurisdiction over the case, the court next *sua sponte* **SEVERS** Counts One through Seven, Counts Eight through Ten, and Counts Eleven through Thirteen, because they are misjoined.

The court finds that neither mandatory nor permissive abstention preclude it from considering Counts One through Seven or Eleven through Thirteen, but

mandatory abstention requires it to abstain from considering Counts Eight through Ten.  As a result, the court **DENIES** the motion to remand Counts One through Seven and Eleven through Thirteen, but **GRANTS** the motion to remand Counts Eight through Ten.

Finally, the court considers whether to refer Counts One through Seven and Eleven through Thirteen to the bankruptcy court.  Because consideration of those counts may involve a determination of non-bankruptcy federal law, the court **DENIES** the request to refer those counts to the bankruptcy court.

## I.     BACKGROUND

In March 2018, Plaintiff Thomas Reynolds, as Chapter 7 trustee of the estates of Atherotech Inc. and Atherotech Holdings, filed this lawsuit in the Circuit Court of Jefferson County, Alabama, naming thirty-two defendants.  (*See* Doc. 1-1 at 9–40).  For ease of reference, the court divides the defendants into three groups: the "Investors," "Behrman Management," and "Mintz Levin."

Atherotech Holdings was the sole shareholder of Atherotech Inc.  (*Id.* at 16). In turn, the Investors are all companies or board members of companies that were shareholders of Atherotech Holdings: Behrman Capital IV, LP; Behrman Brothers IV, LLC; MidCap Financial Investment, LP; AXA Primary Fund America IV, LP; AXA Private Capital I, LP; Core Americas/Global Holdings, LP; CS Strategic Partners IV Investments, LP; Global Fund Partners II, LP; MetLife Insurance

Company of Connecticut; Partners Group Direct Investments 2006, LP; Partners
Group Global Opportunities Subholding Limited; PE Holding USD Gmbh;
Portfolio Advisors Secondary Fund, LP; Stepstone Private Equity Partners III
Cayman Holdings, LP; StepStone Private Equity Partners III LP; the Governor an
Company of the Bank of Ireland; Varma Mutual Pension Insurance Company; ASF
III Bluenote Limited; the Douglas E. Behrman Trust; the Kimberly E. Behrman
Trust; Amanda Zeitlin; Greg Behrman; Gregory Chiate; Gary Dieber; Mark
Grimes; Simon Longergan; William Matthes; Michael Rapport; Padyut Shah; and
Jeffrey Wu. (*Id.* at 16–18).

The two remaining sets of defendants are made up of a single defendant
each. Behrman Management is Behrman Brothers Management Corporation,
which provided financial and operational advice to Atherotech Inc. (Doc. 1-1 at
19). And Mintz Levin is Mintz, Levin, Cohn, Ferris, Govsky, and Popeo, PC., a
law firm that represented Atherotech Inc. (*Id.* at 27).

The complaint alleges that Atherotech Inc. operated a laboratory that
conducted testing on blood cholesterol levels. (*Id.* at 20). Atherotech Inc. would
pay physicians who ordered such testing a processing and handling fee, also known
as a P&H fee. (*Id.*). Beginning in 2011, Behrman Management advised
Atherotech Inc. to grow by increasing direct sales to physicians, a plan that

Berhman Management knew would require Atherotech Inc. to pay P&H fees. (*Id.* at 21).

Although Medicare rules and regulations prohibit the payment of P&H fees, Atherotech Inc. would nevertheless submit claims that included the payment of those fees to Medicare and other federal healthcare programs. (*Id.* at 20–21). Mintz Levin advised Atherotech Inc. to report its competitors' payments of P&H fees to the Department of Justice and, although Mintz Levin "knew or should have known that Atherotech's practice of paying P&H fees put Atherotech at risk of violating the False Claims Act," it failed to advise Atherotech Inc. to stop making those payments. (*Id.* at 27–29).

In 2012, the Department of Justice began to investigate Atherotech Inc.'s payments of P&H fees for violation of the federal False Claims Act, 31 U.S.C. §§ 3729–3730, and the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. (*Id.* at 21, 28). In 2013, while the Department of Justice investigation was ongoing, Atherotech Inc.—already insolvent in light of contingent liabilities for violations of the False Claims Act—executed a dividend recapitalization under which it paid Atherotech Holdings' shareholders millions of dollars. (*Id.* at 23–24, 26). But until June 2014, Berhman Management continued to advise Atherotech Inc. to continue paying physicians P&H fees. (*Id.* at 22). By July 2014,

Atherotech could no longer pay P&H fees and its revenues decreased significantly. (*Id.* at 29).

In March 2016, Atherotech Inc. and Atherotech Holdings filed for bankruptcy. (*Id.* at 16–17). Among other creditors, Mintz Levin filed a claim against Atherotech Inc. (*Id.* at 29). The bankruptcy court appointed Mr. Reynolds as the Chapter 7 trustee for Atherotech Inc. and Atherotech Holdings. (*Id.* at 16).

Mr. Reynolds filed this lawsuit, asserting the following sets of claims. The first set (Counts One through Seven) asserts against various combinations of the Investors claims of intentionally fraudulent transfer, constructively fraudulent transfer, and recovery of fraudulent transfer, citing the Bankruptcy Code and Alabama law. (Doc. 1-1 at 30–34). Specifically, Counts One, Two, and Three allege intentionally fraudulent transfer and constructively fraudulent transfer under 11 U.S.C. § 544 and Alabama law. (*Id.* at 30–32). Counts Four, Five, Six, and Seven seek recovery of fraudulent transfer under 11 U.S.C. § 550(a)(1) and (a)(2). (*Id.* at 32–34). This first set of claims relates to Atherotech Inc's payment of the dividend to its investors. (*Id.*).

The second set (Counts Eight though Ten) asserts against Behrman Management state law claims of negligence, breach of contract, and breach of fiduciary duty. (*Id.* at 34–37). Those claims all relate to Behrman Management's advice about the amount of debt and equity that Atherotech Inc. should maintain,

the advisability of paying out the dividend in 2013, and the business strategy of paying P&H fees to physicians.  (*Id.*).

The final set (Counts Eleven through Thirteen) asserts against Mintz Levin state law claims of unjust enrichment and negligence, and an objection to Mintz Levin's bankruptcy claim.  (*Id.* at 37–39).  Those claims all relate to Mintz Levin's failure to advise Atherotech Inc. to stop paying P&H fees.  (*Id.*).

Defendants removed the case to this court under 28 U.S.C. § 1441(a), contending that the court has federal question jurisdiction because, although each cause of action alleged is one of state law, to prevail on each claim Mr. Reynolds will have to prove that Atherotech Inc. violated the Anti-Kickback Statute or the False Claims Act.  (Doc. 1 at 3–4).  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.").  They also argue that the court has federal question jurisdiction because Counts One through Seven arise under the Bankruptcy Code.  (Doc. 1 at 10). Finally, they assert that removal is proper under 28 U.S.C. § 1452(a) because the court has jurisdiction under 28 U.S.C. § 1334(b), which provides "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  (Doc. 1 at 11).  Title 11, of course, is the Bankruptcy Code.

## II.    DISCUSSION

Federal law permits defendants to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Of relevance to this case, federal courts have original jurisdiction if (1) the action "aris[es] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; (2) the case "aris[es] under title 11, or aris[es] in or relate[s] to cases under title 11," 28 U.S.C. § 1334(b); or (3) the amount in controversy exceeds $75,000 and the parties are completely diverse, 28 U.S.C. § 1332(a).

The court notes that Defendants do not—and cannot—assert that the court has diversity jurisdiction, because at least some of the defendants share their Delaware citizenship with Mr. Reynolds.[1]  (*See* Doc. 1-1 at 10–15).  Instead, they contend that the court has federal question jurisdiction under § 1331 because the state law claims are all based on purported violations of federal law.  (Doc. 1 at 3–10).   In the alternative, Defendants assert that the court has federal question jurisdiction over Counts One through Seven under § 1334(b).  (*Id.* at 10–12).

---

[1] Mr. Reynolds' citizenship is determined by reference to the citizenship of Atherotech Inc. and Atherotech Holdings. *See Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1319 (M.D. Fla. 2013) ("It is the citizenship of the bankrupt rather than the citizenship of the trustee in bankruptcy that is determinative for diversity jurisdiction.") (alteration omitted) (quoting *Carlton v. Baww, Inc.*, 751 F.2d 781, 786–87 (5th Cir. 1985)).  Because both Atherotech Inc. and Atherotech Holdings are citizens of Delaware, so is Mr. Reynolds in his capacity as trustee of their bankruptcy estates.

Mr. Reynolds moves to remand the case to the Jefferson County Circuit Court. (Doc. 26). He contends that the court lacks subject matter jurisdiction because his claims do not involve an "actually disputed and substantial" question of federal law, as he can prevail even without proving a violation of any federal statute. (*Id.* at 6–12). And he argues that, although 28 U.S.C. § 1334(b) confers original jurisdiction on the court, § 1334(c)(2) requires the court to abstain from hearing the case. (*Id.* at 13–17). Finally, he asserts that if the court will not abstain from hearing the case, it should refer the case to the bankruptcy court. (*Id.* at 19).

The court's discussion will proceed as follows. First, the court determines that it has original jurisdiction over each claim in the complaint. Second, the court concludes that, because the claims are misjoined, the court must sever this case into three cases, made up of (1) Counts One through Seven, (2) Counts Eight through Ten, and (3) Counts Eleven through Thirteen. Third, the court finds that neither mandatory nor discretionary abstention requires the court to abstain from considering Counts One through Seven or Eleven through Thirteen, but that mandatory abstention does require the court to abstain from hearing Counts Eight through Ten. Fourth and finally, the court determines that it should not refer the remaining claims to the bankruptcy court.

1.    Original Jurisdiction

Defendants contend that the court has original jurisdiction for two reasons: (1) because Mr. Reynolds must prove a violation of the Anti-Kickback Statute or the False Claims Act to prevail on his state law claims; and (2) because Counts One through Seven arise under the Bankruptcy Code, 11 U.S.C. §§ 544 and 550. (Doc. 1 at 3–11).

As to the first argument, where a removing defendant asserts that a court has federal question jurisdiction over a state law claim, "the question is, does [the] state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc.*, 545 U.S. at 314.  In this case, the answer is no. Whether Atherotech Inc. violated the Anti-Kickback Statute or the False Claims Act is not an essential element to any of the state law claims raised against any of the defendants because Mr. Reynolds could prevail on those claims without proving a violation of those federal statutes.

But the court agrees with Defendants' argument that 28 U.S.C. § 1334 grants this court jurisdiction over Counts One through Seven.  Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

The Eleventh Circuit has not defined precisely what "arising under" or "arising in" mean under § 1334(b), but it has defined those terms as they are used in another part of the Bankruptcy Code, which provides that "[b]ankruptcy judges may hear and determine . . . all core proceedings *arising under* title 11, or *arising in* a case under title 11." 11 U.S.C. § 157(b)(1) (emphases added).

In that context, the Court has held that "'[a]rising under' means that a proceeding invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code. 'Arising in' describes administrative matters unique to the management of a bankruptcy estate." *In re Toledo*, 170 F.3d 1340, 1349 (11th Cir. 1999) (citations omitted); *see also Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th. Cir. 2009). And "related to" means "the proceeding could *conceivably* have an effect on the estate being administered in bankruptcy." *In re Fundamental Long Term Care*, 873 F.3d 1325, 1336 (11th Cir. 2017) (quotation marks and alteration omitted) (emphasis in original).

The court concludes that Counts One through Seven "arise under" the Bankruptcy Code because they "invoke[ ] a cause of action, or substantive right, created by a specific section of the Bankruptcy Code." *In re Toledo*, 170 F.3d at 1349. Counts One, Two, and Three allege intentionally and constructively fraudulent transfer, under 11 U.S.C. § 544 and Alabama law. (Doc. 1-1 at 30–32). Section 544(b) provides that "the trustee may avoid any transfer of an interest of

the debtor in property or any obligation incurred by the debtor that is voidable under applicable law." 11 U.S.C. § 544(b)(1). "Applicable law" is the relevant state law—in this case, Alabama law. *Cf. In re Custom Contractors, LLC*, 745 F.3d 1342, 1348–49 (11th Cir. 2014) (using state law to determine whether transfers were fraudulent under § 544).

The Eleventh Circuit has not addressed whether a trustee's action under § 544 "arises under" the Bankruptcy Code, but the Fifth Circuit has held that it "clearly" does. *Carlton v. Baww, Inc.*, 751 F.2d 781, 787 (5th Cir. 1985) ("A proceeding by a trustee to void a fraudulent conveyance clearly 'arises under title 11.'"). This court agrees. Although a determination of whether the trustee may avoid the transfer depends on an analysis of state law, federal law creates the ability to avoid the transfer. Thus, an action to avoid a transfer under § 544 "arises under" the Bankruptcy Code, giving this court jurisdiction under § 1334(b).

Even if actions to avoid transfers under § 544 did not "arise under" the Bankruptcy Code, Counts Four through Seven, which are based on another section of the Code, does. In those counts, Mr. Reynolds seeks recovery of fraudulent transfers under 11 U.S.C. § 550. (Doc. 1-1 at 32–33). Section 550 provides that "to the extent that a transfer is avoided under section 544 [or other sections], the trustee may recover, for the benefit of the estate, the property transferred, or . . . the value of such property." 11 U.S.C. § 550(a). Section 550, therefore, creates a

"substantive right" and Mr. Reynolds' counts seeking recovery under it "arise under" the Bankruptcy Code. *See In re Toledo*, 170 F.3d at 1349.

Finally, even if claims based on §§ 544 and 550 do not "arise under" the Bankruptcy Code, those claims clearly "relate to" the Bankruptcy Code because they "could *conceivably* have an effect on the estate being administered in bankruptcy." *In re Fundamental Long Term Care*, 873 F.3d at 1336 (quotation marks and alteration omitted) (emphasis in original). Accordingly, the court concludes that it has original (but not exclusive) jurisdiction over Counts One through Seven of Mr. Reynolds' complaint.

The court must also briefly address Count Thirteen, raised against Mintz Levin, which is titled "Objection to Mintz Levin's Claim." (Doc. 1-1 at 39). The claim to which it refers is the claim Mintz Levin filed in Atherotech Inc.'s bankruptcy case. (*Id.* at 29). Section 502 of the Bankruptcy Code governs allowance of and objections to bankruptcy claims. 11 U.S.C. § 502. Accordingly, the court concludes that it has jurisdiction over Count Thirteen based on either the court's "arising in" or "arising under" jurisdiction. 28 U.S.C. § 1334(b); *In re Toledo*, 170 F.3d at 1349 ("'Arising under' means that that a proceeding invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code. 'Arising in' describes administrative matters unique to the management of a bankruptcy estate.") (citation omitted); *see also Stoe v. Flaherty*,

436 F.3d 209, 216 (3d Cir. 2006), as amended (Mar. 17, 2006) ("Proceedings 'arise in' a bankruptcy case, if they have no existence outside of the bankruptcy.") (some quotation marks omitted).

The question remains whether the court also has jurisdiction over the remaining counts—Counts Eight through Twelve—which assert only state law causes of action. The court concludes that it has original jurisdiction because those claims are "related to" the Atherotech bankruptcy cases. 28 U.S.C. § 1334(b). Although the state law claims asserted in Counts Eight through Twelve do not assert causes of action created by the Bankruptcy Code or describe administrative matters unique to the management of a bankruptcy estate, the resolution of those claims "could *conceivably* have an effect on the estate being administered in bankruptcy." *In re Fundamental Long Term Care*, 873 F.3d at 1336 (quotation marks and alteration omitted) (emphasis in original).

In short, the court has original jurisdiction over Counts One through Seven and Thirteen because those claims "arise in" or "arise under" the Bankruptcy Code, and it has original jurisdiction over Counts Eight through Twelve because those counts "relate to" the Atherotech bankruptcy cases. Next, the court will address whether the three sets of claims are misjoined.

2.    <u>Misjoinder</u>

The only party to address misjoinder is Mintz Levin, which argues that Mr. Reynolds fraudulently joined it to defeat diversity jurisdiction.  (Doc. 59 at 10).  The court, however, has concluded that it has original jurisdiction even in the absence of diversity jurisdiction, so it will not address the allegation of fraudulent joinder.   Nevertheless, Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."  Accordingly, the court will *sua sponte* consider whether the claims and defendants are properly joined under Federal Rules of Civil Procedure 18, 19, and 20.

Rule 18 permits a party asserting a claim to "join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).  With limited exceptions, Rule 19 requires a party to join another party if (1) "in that person's absence, the court cannot accord complete relief among existing parties"; or (2) "that person claims an interest relating to the subject of the action" and the party's absence may "impair or impede the person's ability to protect that interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."   Fed. R. Civ. P. 19(a)(1).   And Rule 20 permits the joinder of defendants if (1) "any right to relief is asserted against them jointly, severally, or in

the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) the action involves a question of law or fact common to all defendants.  Fed. R. Civ. P. 20(a)(2).

As discussed above, the court has divided the thirteen claims raised in this complaint into three sets: Counts One through Seven, raised against the Investors; Counts Eight through Ten, raised against Behrman Management; and Counts Eleven through Thirteen, raised against Mintz Levin.  The court did this because the claims and defendants named within each set are properly joined.

First, in Counts One through Seven, Mr. Reynolds names twenty-nine defendants that are either companies or board members of companies that were shareholders of Atherotech Holdings, and he alleges that Atherotech Inc.'s payment of a dividend to those defendants was a fraudulent transfer under Alabama law.  (Doc. 1-1 at 16–18, 30–34).  As a result, the joinder of those  seven claims and twenty-nine defendants was proper.  *See* Fed. R. Civ. P. 18(a), 20(a)(2).

Similarly, in Counts Eight through Ten, Mr. Reynolds alleges that Behrman Management is liable for negligence, breach of contract, and breach of fiduciary duty.  (Doc. 1-1 at 34–37).  The joinder of those three claims against a single defendant is proper under Rule 18(a).  And finally, in Counts Eleven through Thirteen, Mr. Reynolds asserts that Mintz Levin is liable for unjust enrichment and negligence, and that its liability for those state law torts negates its claim against

Atherotech Inc.'s bankruptcy estate.  (*Id.* at 37–39).  Again, the joinder of those claims against a single defendant is proper under Rule 18(a).

But Counts One through Seven are not properly joined with Counts Eight through Ten or Eleven through Thirteen, nor are Counts Eight through Ten properly joined with Counts Eleven through Thirteen.  Counts Eight through Ten deal with one defendant—Behrman Management—that is not named in the other two sets of claims.  And Counts Eleven through Thirteen deal with another defendant—Mintz Levin—that is not named in the other two sets of claims. Accordingly, Counts One through Seven, Counts Eight through Ten, and Counts Eleven through Twelve are not properly joined because no common defendant is named in each set.  *See* Fed. R. Civ. P. 18(a).

In addition, Behrman Management and Mintz Levin are not properly joined as defendants, to either the Investors or to each other.  Behrman Management and Mintz Levin are not required parties in the claims against the Investors because the court could afford complete relief among the existing parties to Counts One through Seven even without Behrman Management or Mintz Levin, and neither Behrman Management nor Mintz Levin claims an interest relating to the dividend. *See* Fed. R. Civ. P. 19(a)(1).  And Behrman Management and Mintz Levin cannot be permissively joined with the Investors because Mr. Reynolds does not seek any relief against the Investors, Behrman Management, and Mintz Levin jointly,

severally, or in the alternative.  *See* Fed. R. Civ. P. 19(a)(2).  Accordingly, the court finds that the claims against the Investors (Counts One through Seven) are misjoined with the claims against Behrman Management (Counts Eight through Ten) and Mintz Levin (Counts Eleven through Thirteen).

Furthermore, the court concludes that the Behrman Management and Mintz Levin are not properly joined defendants.  Neither Behrman Management nor Mintz Levin is a required party in the claims against the other defendant: the court could afford complete relief in each set of claims without the joinder of the other defendant, and neither defendant claims an interest relating to the subject of the claims against the other defendant.  *See* Fed. R. Civ. P. 19(a)(1).  Nor is Behrman Management or Mintz Levin a permissive party in the claims against the other defendant: no right to relief is asserted against Behrman Management and Mintz Levin jointly, severally, or in the alternative.  *See* Fed. R. Civ. P. 20(a)(2).

Accordingly, the court concludes that Counts One through Seven, naming the Investors; Counts Eight through Ten, naming Behrman Management; and Counts Eleven through Thirteen, naming Mintz Levin, are misjoined.  As a result, the court **SEVERS** those counts, pursuant to Rule 21, into three separate cases. Having severed the counts, the court will next address whether it must or should abstain from each of the three cases, under 28 U.S.C. § 1334(c).

3.   Abstention

Mr. Reynolds contends that the court must abstain under § 1334(c)(2), or if mandatory abstention does not apply, that it should abstain under § 1334(c)(1). (Doc. 26 at 13–18).

Section 1334(c)(1) permits—but does not require—a court to abstain when the proceedings "aris[e] under title 11 or aris[e] in or relate[ ] to a case under title 11" and "the interest of justice" or "the interest of comity with State courts or respect for State law" calls for abstention.   *Id.* § 1334(c)(1).   By contrast, § 1334(c)(2) requires a court to abstain when five factors have been satisfied: (1) a party files a "timely" motion to abstain; (2) the action is based on a state law claim; (3) the action "relate[s] to a case under title 11" but it does not "aris[e] under title 11 or aris[e] in a case under title 11"; (4) the court has no other basis for subject matter jurisdiction; and (5) "an action is commenced" in a state court that can timely adjudicate it.   Because the court has severed the claims, the court will address each set of claims separately.

   i.   *Counts One through Seven*

As discussed above, the court has found that it has original jurisdiction over Counts One through Seven because those claims "arise under" the Bankruptcy Code.   As a result, mandatory abstention does not apply, and the court will

18

consider only whether it should exercise its discretion to abstain from considering those claims.  *See* 28 U.S.C. § 1334(c).

Mr. Reynolds contends that abstention is appropriate in this case because he has made a jury demand and issues of comity weigh in favor of remand.  (Doc. 26 at 18).  The court concludes that Mr. Reynolds' jury demand does not warrant remand because this court can hold a jury trial.  And although Mr. Reynolds' claims are based on state law, the state law issues are neither novel nor complex, and they do potentially implicate issues of federal law.  Given "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," and the Supreme Court's admonition to abstain only in "exceptional circumstances," the court finds that the interests of justice prohibit the court from abstaining in Counts One through Seven.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976)

### ii.    *Counts Eight through Ten*

The court has found that it has jurisdiction over Counts Eight through Ten based solely on the court's "related to" jurisdiction.  As a result, the court must determine whether the other four elements of mandatory abstention are present.  Those elements are: (1) a party files a "timely" motion to abstain; (2) the action is based on a state law claim; (3) the court has no basis for subject matter jurisdiction

other than § 1334(b); and (4) "an action is commenced" in a state court that can timely adjudicate it.  28 U.S.C. § 1334(c)(2).

Mr. Reynolds has satisfied those elements.  First, Mr. Reynolds expressly seeks abstention in his motion to remand the case, and the court finds that the motion was timely filed.  (*See* Doc. 26 at 13–17).  Second, Counts Eight, Nine, and Ten are state law claims.  Third, the court has no other basis for subject matter jurisdiction.  As discussed above, the court lacks federal question jurisdiction because the state law claims do not implicate a disputed and substantial federal question, and the court lacks diversity jurisdiction because both Behrman Management and Mr. Reynolds are citizens of Delaware.  (Doc. 1-1 at 10, 15).  As a result, the only basis for jurisdiction is § 1334(b).

Finally, Mr. Reynolds commenced this case in a State forum of appropriate jurisdiction that is capable of adjudicating the case in a timely fashion.  Defendants contend that Mr. Reynolds does not satisfy the last requirement because he filed the state court complaint after the commencement of the Chapter 7 bankruptcy proceedings.  The court rejects that argument based on the bankruptcy court's persuasive decision holding that "[m]andatory abstention can apply even if the state court case post-dated the bankruptcy." *In re Danley*, 552 B.R. 871, 887 n.13 (M.D. Ala. 2016).  Accordingly, the court finds that Mr. Reynolds has shown that the court must abstain, under § 1334(c)(2), from hearing Counts Eight through

Ten.  The court **REMANDS** those claims to the state court from which they were removed.

> ### iii.    Counts Eleven through Thirteen

Like the other sets of claims, the court has already determined that it has jurisdiction over Counts Eleven through Thirteen under § 1334(b).  But the court notes that, now that it has severed these three claims from the others, it also diversity jurisdiction over these three claims.  The amount in controversy is at least $181,397.99—the amount of the claim Mintz Levin has made in Atherotech Inc.'s bankruptcy case.  (*See* Doc. 1-1 at 29).  And unlike Mr. Reynolds, who is a citizen of Delaware, Mintz Levin is citizen of Massachusetts.  (*Id.* at 10, 15; Doc. 76).

Because the court has diversity jurisdiction over Counts Eleven through Thirteen, mandatory abstention does not apply.  *See* 28 U.S.C. § 1334(b)(2) (requiring abstention only where "an action could not have been commenced in a court of the United States absent jurisdiction under [§ 1334]").  Thus, the court will consider only whether it should abstain under § 1334(b)(1).

As in Counts One through Seven, Mr. Reynolds contends that the court should abstain because he has made a jury demand and issues of comity weigh in favor of remand.  (Doc. 26 at 18).  And as in those counts, the court concludes that those factors do not weigh in favor of abstention.  Because the interest of justice

favors the court's consideration of these counts, the court will not abstain from considering them.

    4.    <u>Referral to the Bankruptcy Court</u>

Mr. Reynolds contends that, if the court will not remand or abstain in this case, it should refer the case to the bankruptcy court.  (Doc. 26 at 19).  Defendants respond that the court must not refer the case because 28 U.S.C. § 157(d) requires a district court to withdraw the reference of a case to bankruptcy court if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  (Doc. 60 at 29–30).

Although the court has already found that the claims over which it has jurisdiction do not implicate a substantial and disputed question of federal law, the court agrees with Defendants that resolution of those claims will require at least some consideration of non-Bankruptcy Code federal law.  In Counts One through Seven, one of Mr. Reynolds' theories supporting the allegedly fraudulent transfer is that Atherotech Inc. was insolvent because of contingent liabilities for violations of the False Claims Act and the Anti-Kickback Statute, both federal laws that regulate activities affecting interstate commerce.  (Doc. 1-1 at 30–34).  And in Counts Eleven through Thirteen, Mr. Reynolds contends that Mintz Levin is liable for providing bad advice about the legality, under the Anti-Kickback Statute and

the False Claims Act, of paying P&H fees.  (*Id.* at 37–39).  Accordingly, the court **DENIES** Mr. Reynolds' request to refer the claims to the bankruptcy court.

### III.   CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** Mr. Reynolds' motion to remand or abstain, or in the alternative, to refer to the bankruptcy court. (Doc. 26).

The court **SEVERS** this case into three cases: (1) Counts One through Seven; (2) Counts Eight through Ten; and (3) Counts Eleven through Thirteen.

The court **GRANTS** the motion to remand Counts Eight through Ten and **REMANDS** those counts to the Jefferson County Circuit Court.

The court **DENIES** the motion to remand Counts One through Seven and Eleven through Thirteen, **DENIES** the motion to abstain from considering Counts One through Seven and Eleven through Thirteen, and **DENIES** the motion to refer Counts One through Seven and Eleven through Thirteen to the bankruptcy court.

The court **DIRECTS** the Clerk of Court to keep Counts One through Seven under this civil action number and to create a new civil action number for Counts Eleven through Thirteen, with the new action assigned directly to the undersigned. The court **WAIVES** the filing fee for the new civil action number to which Counts Eleven through Thirteen will be assigned.  The court **DIRECTS** the Clerk of Court

to file Mintz Levin's motion to dismiss (doc. 30) in the newly created civil action

number, and to term the motion to dismiss (doc. 30) from this case's docket.

DONE and ORDERED this September 6, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE