FILED

2018 Sep-06 PM 02:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| THOMAS E. REYNOLDS, as Trustee,<br><br>   Plaintiff,<br><br>  v.<br><br>BEHRMAN CAPITAL IV L.P.; AXA PRIMARY FUND AMERICA IV, LP; AXA PRIVATE CAPITAL I, LP; CORE AMERICAS/GLOBAL HOLDINGS, LP; GLOBAL FUND PARTNERS II, LP; METLIFE INSURANCE COMPANY OF CONNECTICUT; PARTNERS GROUP DIRECT INVESTMENTS 2006, LP; PARTNERS GROUP DIRECT INVESTMENTS 2006, LP; PARTNERS GROUP GLOBAL OPPORTUNITIES SUBHOLDING LIMITED; PE HOLDING USD GMBH; PORTFOLIO ADVISORS SECONDARY FUND, LP; STEPSTONE PRIVATE EQUITY PARTNERS III CAYMAN HOLDINGS, LP; STEPSTONE PRIVATE EQUITY PARTNERS III, LP; THE GOVERNOR AND COMPANY OF THE BANK OF ICELAND; VARMA MUTUAL PENSION INSURANCE COMPANY; ASF III BLUE NOTE LIMITED; BEHRMAN BROTHERS IV L.L.C.; AMANDA ZEITLIN; GREG M. BEHRMAN; GREGORY J. CHIATE; GARY DIEBER; DOUGLAS E. BEHRMAN TRUST; MARK V. GRIMES; KIMBERLY B. BEHRMAN TRUST; SIMON LONERGAN; WILLIAM M. MATTHES; MICHAEL RAPPAPORT; PRADYUT SHAH; JEFFREY S. WU; MIDCAP FINANCIAL SBIC, LP; BEHRMAN BROTHERS MANAGEMENT CORPORATION; MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.; and FICTITIOUS PARTIES A-C,<br><br>   Defendants. | Removed from:<br>Circuit Court of<br>Jefferson County, Alabama<br>Case No. 01-CV-2018-900889 |

**NOTICE OF REMOVAL BY BEHRMAN DEFENDANTS**
**AND LIMITED PARTNER DEFENDANTS**

PLEASE TAKE NOTICE that Defendants Behrman Capital IV L.P., Behrman Brothers IV L.L.C., Amanda Zeitlin, Greg M. Behrman, Gregory J. Chiate, Gary Dieber, Douglas E. Behrman Trust, Mark V. Grimes, Kimberly B. Behrman Trust, Simon Lonergan, William M. Matthes, Michael Rapport, Pradyut Shah, Jeffrey S. Wu, and Behrman Brothers Management Corporation (collectively, the "Behrman Defendants"), and AXA Primary Fund America IV, LP, AXA Private Capital I, LP, Core Americas/Global Holdings, LP, Strategic Partners IV Investments, LP (f/k/a CS Strategic Partners IV Investments, LP), Global Fund Partners II, LP, Partners Group Direct Investments 2006, LP, Partners Group Global Opportunities Subholding Limited, PE Holding USD Gmbh, Portfolio Advisors Secondary Fund, L.P., StepStone Private Equity Partners III Cayman Holdings, L.P., StepStone Private Equity Partners III L.P., The Governor and Company of the Bank of Ireland, Varma Mutual Pension Insurance Company, and ASF III Bluenote Limited (collectively, the "Limited Partner Defendants" and, together with the Behrman Defendants, the "Removing Defendants"),[1] hereby remove to this Court the above-captioned action (the "Action")[2] currently pending in the Circuit Court of Jefferson County, Alabama (the "Circuit Court") as Civil Case No. 01-CV-2018-900889.  In support of this Notice of Removal, the Removing Defendants state as follows:

---

[1] This Notice of Removal is joined in or consented to by all named defendants in the Action, including defendants that have not been served.  The three defendants not included herein as Removing Defendants are MidCap Financial Investment, LP (f/k/a MidCap Financial SBIC, LP) and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., which are separately represented and are contemporaneously herewith filing joinders to this Notice of Removal, and Brighthouse Life Insurance Company (f/k/a MetLife Insurance Company of Connecticut), which is in the process of retaining counsel and also has consented to removal.  *See infra* ¶ 22.

[2] The caption used herein is based on the caption of the Complaint (as defined below), which omitted or otherwise misidentified several defendants. By filing this Notice of Removal, the Removing Defendants expressly reserve, and do not waive, all rights and objections with respect to their omission or misidentification in the caption of the Complaint.

## GROUNDS FOR REMOVAL

1.      Plaintiff Thomas E. Reynolds, as chapter 7 trustee of the estates of Atherotech, Inc. ("Atherotech") and Atherotech Holdings ("Holdings") (together with Atherotech, the "Debtors"), commenced this Action by filing a complaint in the Circuit Court on or about March 3, 2018.

2.      Pursuant to the requirements of 28 U.S.C. § 1446(a), copies of all process, pleadings and orders, including Plaintiff's complaint (the "Complaint"), served upon the Removing Defendants are attached hereto.  Exhibit A includes the case action summary, the Complaint, all summonses issued by the clerk of the Circuit Court, and all other documents contained in the Circuit Court's file regarding this Action.  Exhibit B includes copies of the summonses and the Complaint from those Removing Defendants that have been able to confirm they received the summons and the Complaint via certified mail.[3]

3.      For the reasons set forth below, this Court has original jurisdiction over the Action.  This Action accordingly may be removed to this Court pursuant to 28 U.S.C. § 1441 *et seq.*

**A.      Federal Question Jurisdiction – Federal Anti-Kickback Statute and Federal False Claims Act**

4.      This Court has federal question jurisdiction over the Action pursuant to 28 U.S.C. § 1331.  Each of the claims asserted by Plaintiff is predicated entirely on allegations that Atherotech violated the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and the federal

---

[3] According to the Circuit Court docket, the Trustee attempted service of the summons and the Complaint on all defendants via certified mail, but not all defendants have received a copy of the summons and the Complaint via certified mail as of the filing of this Notice of Removal. Accordingly, Exhibit B only includes copies of the summonses and the Complaint from those Removing Defendants that have been able to confirm they received the summons and the Complaint via certified mail.  The Removing Defendants expressly reserve, and do not waive, all rights and objections with respect to sufficiency of service.

False Claims Act, 31 U.S.C. §§ 3729-3730.  Specifically, Plaintiff alleges that Atherotech, which

operated a specialty laboratory for testing blood cholesterol levels using licensed technology

known as the "VAP Test," paid processing and handling fees ("P&H Fees") to some physicians

who ordered the VAP Test.  Compl. ¶¶ 67-70.  Plaintiff alleges that the payment of P&H Fees

violated the federal Anti-Kickback Statute and the federal False Claims Act and that Atherotech

continued these purportedly unlawful business practices despite receiving notice of an

investigation by the Department of Justice.  *Id.* ¶¶ 78-79, 109-111.  Plaintiff alleges that

Atherotech was liable to the federal government for treble damages and penalties of not less than

$5,500 and not more than $11,000 for each payment of a P&H Fee.  *Id.* ¶¶ 80-81.  Based on

these alleged violations of federal law, Plaintiff alleges that Atherotech had contingent liabilities

to the federal government of approximately $107,073,000 as of June 2013.  *Id.* ¶¶ 82-85; *see also*

*id.* ¶ 111 ("[S]uch payments were illegal and violated Federal Anti-Kickback Statute and the

Civil False Claims Act.").  These allegations—which are the predicate for all of Plaintiff's

claims against the Removing Defendants—will be vigorously disputed by the Removing

Defendants.

> 5.      Because Atherotech's purported violations of federal law are the basis for each of

Plaintiff's causes of action, these causes of action must all fail if the Plaintiff cannot prove that

Atherotech violated the federal Anti-Kickback Statute or the federal False Claims Act.

Critically, the United States has not charged Atherotech with a violation of either law, and no

court has found that Atherotech violated either law.  For Plaintiff to prove each of his claims,

then, he will have to prove that (1) Atherotech violated a federal criminal law, the Anti-Kickback

Statute, and that (2) such violation is also a predicate for a violation of the federal civil False

Claims Act through Atherotech's knowing submission of false claims to the United States government.

6.      An examination of Plaintiff's claims makes the pervasive federal law issues apparent.

7.      Counts I through VII seek to avoid and recover a dividend of approximately $31 million paid to Atherotech's shareholders in 2013.   Each of these fraudulent transfer and recovery counts is expressly predicated on allegations that Atherotech's business practices violated the federal Anti-Kickback Statute and False Claims Act and that Atherotech was therefore liable to the federal government for over $100 million.  *See id.* ¶¶ 146-151 (Count I intentional fraudulent transfer claim based on allegations that "Atherotech had unrecorded contingent liabilities *for violations of the False Claims Act* in the amount of approximately $107,073,000" and was therefore insolvent when it paid the dividend) (emphasis added); *id.* ¶¶ 155-157 (Count II constructive fraudulent transfer claim based on allegations that Atherotech "incurred a liability *under the False Claims Act* for $5,500" for "each Medicare-covered blood sample that Atherotech received and tested from physicians that received P&H fees" and, based on these alleged False Claims Act liabilities, Atherotech had unreasonably small capital and incurred, or should have believed it would incur, debts beyond its ability to pay) (emphasis added); *id.* ¶¶ 162-164 (Count III constructive fraudulent transfer claim based on allegations that Atherotech was insolvent due to "unrecorded contingent liabilities for *violations of the False Claims Act* in the amount of $107,073,000) (emphasis added); *id.* ¶¶ 166-182 (Counts IV through VII to recover alleged fraudulent transfers based on allegations in Counts I through III).  Plaintiff acknowledges that Atherotech obtained a solvency opinion from Houlihan Lokey, Inc. in connection with the payment of the dividend demonstrating that Atherotech was solvent, but he

alleges that the solvency opinion failed to consider the alleged contingent liabilities to the federal government for violations of the federal Anti-Kickback Statute and False Claims Act.  *Id.* ¶¶ 86-93, 107-108 ("At the time of the Dividend Recap, Atherotech – having assets of only $45,244,096 – could not pay its liabilities, including the unrecorded contingent liabilities of $107,073,000 *for violations of the False Claims Act*, as they became due.") (emphasis added). Plaintiff's Complaint also bases Debtors' purported "contingent liability" on "treble damages and penalties."  Compl. ¶¶ 80-81.  These alleged damages are only permitted by federal statute, the federal False Claims Act, for violations of that statute.  Plaintiff's "contingent liability" theory therefore presents issues of contingent damages under federal law.

8.      Counts VIII through X, which assert claims of negligence, breach of contract, and breach of fiduciary duty against Behrman Brothers Management Corporation ("Behrman Management") in connection with a contractual advisory agreement, are similarly predicated on allegations that Atherotech was violating the federal Anti-Kickback Statute and False Claims Act.  *See, e.g.*, *id.* ¶¶ 187 (Count VIII alleging breach of duty "by encouraging Atherotech to pay out a dividend whereby Atherotech became more insolvent" based on purported contingent liabilities under the federal Anti-Kickback Statute and False Claims Act); *id.* ¶ 188 (Count VIII alleging "Behrman Management also breached its duty to Atherotech by advising Atherotech to engage in a business strategy that would increase the company's payments of P&H Fees, *which were illegal kickbacks to physicians*") (emphasis added); *id.* ¶¶ 196, 201 (Counts IX and X based on the same allegations).

9.      Counts XI through XIII, which assert claims for unjust enrichment, negligence, and an "objection to claim" against Mintz Levin, Cohn, Ferris, Glovsky, and Popeo P.C. ("Mintz Levin") are all also based on Atherotech's alleged violations of the federal Anti-Kickback

Statute and federal False Claims Act.  Specifically, Plaintiff alleges that "Atherotech retained

Mintz Levin to advise Atherotech as to the legality and permissibility of making P&H Fee

payments to physicians," Compl. ¶ 115, and contends that "Mintz Levin never advised

Atherotech to stop paying P&H Fees," *id*. ¶ 210, while also referring to "Mintz Levin's advice

and/or lack of advice on the legality of P&H Fees."  *Id*. ¶  207.  Plaintiff asserts that "Mintz

Levin either knew or should have known that Atherotech's practice of paying P&H Fees put

Atherotech *at risk of violating the False Claims Act*," *id.* ¶ 127 (emphasis added).  Plaintiff also

alleges that Mintz Levin advised Atherotech to bring practices of paying P&H Fees to the

government's attention, *id*. ¶ 212, and a Department of Justice investigation ensued.  *See also id.*

¶¶ 204-207 (Count XI based on allegations that "Mintz Levin failed to provide Atherotech with

competent regulatory advice concerning, among other things, *the legality of paying P&H Fees*")

(emphasis added); *id.* ¶¶ 210-215 (Count XII based on allegation "Mintz Levin's failure to

competently advise regarding ceasing to pay P&H Fees *resulted in False Act Claims* [sic] against

Atherotech for a minimum of $26.4 million") (emphasis added); *id.* ¶¶ 216-218 (Count XIII for

"objection to claim" based on alleged negligent advice of Mintz Levin relating to the propriety of

P&H Fees).

          10.     The entirety of the Action against the Removing Defendants is predicated on

whether Atherotech violated the federal Anti-Kickback Statute and federal False Claims Act and

thereby implicates significant, disputed federal issues.  The legality of the P&H Fees under the

federal Anti-Kickback Statute and federal False Claims Act is "an important issue of federal law

that sensibly belongs in a federal court."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g &*

*Mfg.*, 545 U.S. 308, 315 (2005); *see also Prince v. Berg*, No. C 10–4233 RS, 2011 WL 9103, at

*1-2 (N.D. Cal. Jan. 3, 2011) (holding that claims for breach of fiduciary duty and abuse of

control that were dependent on violations of the False Claims Act presented substantial federal issues that conferred federal question jurisdiction).   Because there has been no judicial determination that Atherotech's business practices with respect to P&H Fees violated the federal Anti-Kickback Statute or the False Claims Act, to meet his burden of proof as to all Defendants, Plaintiff must prove actual violations of these two federal laws.

11.     The pervasive federal questions in this action fall squarely under the Supreme Court's standard for federal question jurisdiction, and a federal court should hear Plaintiff's "claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312; *see also Prince*, 2011 WL 9103, at *1-2.

12.     This Court has federal question jurisdiction over this Action because each of the requirements set forth by the Supreme Court in *Grable* are met:

(1)     Plaintiff's claims, on the face of the Complaint, expressly assert and are predicated on violations of federal law – the federal Anti-Kickback Statute and the federal False Claims Act.   *See Grable*, 545 U.S. at 314-15 (explaining that whether the defendant "was given notice within the meaning of the federal statute [was] an essential element of its quiet title claim," because the defendant had "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law"); *Prince*, 2011 WL 9103, at *2 ("There is no dispute . . . that the alleged wrongdoing of the individual defendants [supporting the plaintiff's state-law claims of breach of fiduciary duty and abuse of control] consisted of their participation in or failure to prevent False Claims Act violations.").

(2)      Defendants actually dispute Plaintiff's contentions that (i) Atherotech's P&H Fees violated the federal Anti-Kickback Statute or the federal False Claims Act and that (ii) Atherotech has been or could be subject to treble damages or penalties permitted exclusively by statute under the federal False Claims Act. *See Grable*, 545 U.S. at 315 ("[T]he meaning of the federal statute is actually in dispute."); *Prince*, 2011 WL 9103, at \*2 ("[The plaintiff's] state court claims depend on his ability to prove, whether by application of collateral estoppel or otherwise, the alleged underlying federal claims.").

(3)      The disputed federal issues are substantial because they involve interpretations of federal criminal and civil laws with broad application across the health care industry.  Thus, they would benefit from the "experience, solicitude, and hope of uniformity that a federal forum offers . . . federal issues." *See Grable*, 545 U.S. at 313, 316 (emphasizing that the "meaning of the federal tax provision [essential to the plaintiff's state-law claim] is an important issue of federal law that sensibly belongs in a federal court").  Further, the federal government has a strong interest in seeing this issue litigated in a federal forum because False Claims Act cases are brought in the name of the United States, and there is a federal interest in consistent application of these federal law provisions and payments to physicians are the subject of extensive federal regulation and legislation.  *See Prince*, 2011 WL 9103, at \*3 (explaining that company billing practices with respect to the federal government under the False Claims Act are issues of "paramount federal concern and therefore the subject of extensive federal regulation and legislation").

(4)      A federal forum may entertain Plaintiff's claims without disturbing any

congressionally approved balance of federal and state judicial responsibilities.

*See Grable*, 545 U.S. at 315.  The *qui tam* vehicle under the False Claims Act

indicates Congress's intent that federal courts decide issues related to the Act.

*See Prince*, 2011 WL 9103, at \*3 ("This is not a case where Congress has

declined to provide a private right of action for a violation of federal standards.").

Additionally, bankruptcy trustees rarely file fraudulent conveyance claims in state

court, and thus there is no concern about federalizing an area of law that is already

largely federal.  *See Grable*, 545 U.S. at 315 (reasoning that exercising federal

jurisdiction over the rarity of state title cases raising disputed federal issues would

"portend only a microscopic effect on the federal-state division of labor").

*See Grable*, 545 U.S. at 314-15.

### B.      Federal Question Jurisdiction – Title 11

13.      This Court also has federal question jurisdiction over Counts I through VII

pursuant to 28 U.S.C. § 1331 because such claims arise under the laws of the United States.

Specifically, Counts I through III are asserted pursuant to 11 U.S.C. § 544, and Counts IV

through VIII are asserted pursuant to 11 U.S.C. § 550.

### C.      Supplemental Jurisdiction

14.      To the extent the Court determines that it has federal question jurisdiction

pursuant to 28 U.S.C. § 1331 over some, but not, all of the claims asserted in the Action, the

Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the claims for which the

Court does not have federal question jurisdiction because all claims in the Action are so related

that they form part of the same case or controversy.

## D.  Alternative Basis for Federal Jurisdiction

15.     Alternatively, and solely to the extent the Court determines that it does not have federal question or supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367(a) over the claims in the Action, the Action is being removed to this Court based on this Court's original jurisdiction over the Action pursuant to 28 U.S.C. § 1334(b).

16.     On March 4, 2016, Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court of the Northern District of Alabama, which are being administered as *In re Atherotech, Inc.*, No. 16-00909-TOM-7 (Bankr. N.D. Ala.), and *In re Atherotech Holdings, Inc.*, No. 16-00910-TOM-7 (Bankr. N.D. Ala.) (the "Bankruptcy Proceedings").  Plaintiff is the chapter 7 trustee for each of the Debtors.

17.     The Action may be removed to this Court pursuant to 28 U.S.C. § 1452(a), which provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  This Court has original jurisdiction over the Action pursuant to 28 U.S.C. § 1334(b), which confers jurisdiction over all civil proceedings "arising under title 11, or arising in or related to a case under title 11."  Each claim in the Action is "related to a case under title 11" because such claims are property of the bankruptcy estate and their prosecution could conceivably have an effect on the bankruptcy estate, either by enlarging the estate through a recovery or by diminishing the estate through the expenditure of legal fees.  *See, e.g.*, *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990) (observing that a civil proceeding is related to a case under title 11 if it "could conceivably have an effect on the estate being administered in bankruptcy").  Counts I through VI for avoidance and recovery of alleged

11

fraudulent transfers are brought pursuant to 11 U.S.C. §§ 544, 550, and thus are claims "arising

under title 11."

18.     Venue is proper under 28 U.S.C. § 1409(a) because the Action is related to the

Bankruptcy Proceedings, which are pending in the United States Bankruptcy Court for the

Northern District of Alabama.  Pursuant to Fed. R. Bankr. P. 9027(a)(1), the undersigned have

signed this Notice of Removal pursuant to Bankruptcy Rule 9011.

19.     Accordingly, removal of the Action is also proper under 28 U.S.C. § 1452(a).

## REMOVAL TO THIS COURT IS PROPER AND TIMELY

20.     Removal to the United States District Court for the Northern District of Alabama

is proper pursuant to 28 U.S.C. § 1441(a) because this forum embraces the Circuit Court of

Jefferson County, Alabama, the court where this Action is currently pending.

21.     This Notice of Removal is filed within 30 days of the filing of the Complaint in

the Circuit Court, and thus is filed within 30 days after receipt by the Removing Defendants,

through service or otherwise, of a copy of the Complaint.  This Notice of Removal is therefore

timely pursuant to 28 U.S.C. § 1446(b)(1).

22.     All defendants have joined in or otherwise consented to the filing of this Notice of

Removal.  The three defendants not included herein as Removing Defendants are MidCap

Financial Investment, LP (f/k/a MidCap Financial SBIC, LP) and Mintz Levin, which are

separately represented and contemporaneously herewith filing joinders to this Notice of

Removal, and Brighthouse Life Insurance Company (f/k/a MetLife Insurance Company of

Connecticut) ("Brighthouse"), which has consented to removal.  A copy of the written consent of

Brighthouse to removal is attached hereto as Exhibit C.  Thus, the requirements of 28 U.S.C.

§ 1446(b)(2) are fully satisfied.

23.     According to the Circuit Court's docket, the Trustee attempted service upon all defendants via certified mail, including those Limited Partner Defendants that are located outside the United States.  As of the filing of this Notice of Removal, many of the Removing Defendants are not aware of, and do not believe they have received, a copy of the summons and the Complaint via certified mail.  All of the Removing Defendants, including those that have not received a copy of the summons and the Complaint via certified mail, join in and consent to this Notice of Removal, and do so expressly reserving and without waiver of all rights and objections with respect to service of process and personal jurisdiction.

## SPECIAL APPEARANCE AND RESERVATIONS OF RIGHTS

24.     The Removing Defendants specifically appear only for the purpose of removal, subject to and without waiving any defenses and rights available to them.  The Removing Defendants expressly reserve, and do not waive, all rights and objections with respect to the sufficiency of service, personal jurisdiction, and all other rights and defenses.

25.     The Removing Defendants reserve the right to submit additional evidence and argument as needed to supplement this statement of the grounds for removal.

## NOTICE

26.     In accordance with 28 U.S.C. § 1446(d), counsel for the Removing Defendants certify that, immediately upon the filing of this Notice of Removal, they will give written notice thereof to Plaintiff's counsel and file a copy of this Notice of Removal with the Circuit Court.

WHEREFORE, the Court and parties will please take notice that *Reynolds v. Behrman Capital IV L.P. et al.*, Civil Case No. 01-CV-2018-900889, is removed to this Court.

Dated: March 30, 2018                              Respectfully submitted,


                                                   /s/ John A. Earnhardt
                                                   John A. Earnhardt (ASB-3724-A49J)
                                                   Ryan D. Thompson (ASB-0847-A48T)
                                                   Evan P. Moltz (ASB-5001-V70M)
                                                   *Attorneys for the Behrman Defendants and the Limited Partner Defendants*


OF COUNSEL:
Richard D. Batchelder, Jr. (*pro hac vice* to be submitted)
Andrew G. Devore (*pro hac vice* to be submitted)
Gregory L. Demers (*pro hac vice* to be submitted)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 01949
(617)-951-7000
Email: richard.batchelder@ropesgray.com
       andrew.devore@ropesgray.com
       gregory.demers@ropesgray.com


MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone:  205.254.1000
Fax:  205.254.1999
Email: jearnhardt@maynardcooper.com
       rthompson@maynardcooper.com
       emoltz@maynardcooper.com

## **Certificate of Service**

The undersigned hereby certifies and affirms that on March 30, 2018, he electronically filed the Notice of Removal with the Clerk of the Court, using the ECF system, which will send an electronic copy of same to all registered parties.

The undersigned further certifies and affirms that a copy of the foregoing notice will be served on counsel for the Plaintiff and all known defendants.


/s/ John A. Earnhardt
OF COUNSEL

15