FILED
2019 Feb-25 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS E. REYNOLDS, as Trustee, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | 2:18-cv-01453-ACA |
| | ] | |
| BEHRMAN CAPITAL IV L.P, et al., | ] | |
| | ] | |
| Defendants. | ] | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Defendant Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.'s ("Mintz Levin") motion to dismiss the complaint. (Doc. 3). Plaintiff Thomas Reynolds, as chapter 7 trustee for the estates of Atherotech Inc. ("Atherotech") and Atherotech Holdings ("Holdings"), has sued Mintz Levin, asserting claims of unjust enrichment ("Count Eleven"), negligence ("Count Twelve") and "objection to Mintz Levin's claim" in bankruptcy ("Count Thirteen"). (Doc. 2-1 at 37–39).

After full briefing on the motion and a hearing held on February 12, 2019, the court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. The court **GRANTS** the motion to dismiss Count Eleven because Mr. Reynolds concedes that Count Eleven does not state a claim under federal pleading standards. The court **DENIES** the motion to dismiss Count Twelve because

Mr. Reynolds has adequately stated a plausible claim for legal malpractice. The court **DENIES** the motion to dismiss Count Thirteen because Mintz Levin abandoned the motion to dismiss that claim.

I. **BACKGROUND**

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). Mr. Reynolds alleges that Atherotech operated a laboratory that conducted testing on blood cholesterol levels.[1] (Doc. 2-1 at 20 ¶ 67). It paid physicians who ordered such testing a processing and handling fee, also known as a P&H fee. (*Id.* ¶¶ 69–70). Although Medicare rules and regulations prohibit the payment of P&H fees, Atherotech would nevertheless submit claims that included the payment of those fees to Medicare and other federal healthcare programs. (*Id.* at 20 ¶ 71, 21 ¶ 74).

In 2011, Atherotech retained Mintz Levin to provide legal and regulatory advice to Atherotech. (Doc. 2-1 at 27 ¶¶ 112–13). Atherotech requested advice from Mintz Levin about the "legality and permissibility" of its P&H fee payments under healthcare statutes and regulations. (*Id.* at 27 ¶¶ 114–15). The complaint does not state what advice Mintz Levin gave about the legality of making P&H fee payments, but it does allege that Mintz Levin told Atherotech to report both its

---

[1] Atherotech was wholly owned by Holdings. (Doc. 2-1 at 16 ¶ 44).

competitors' and its own P&H fee payments to the U.S. Department of Justice ("DOJ"). (*Id.* at 27 ¶¶ 116–17, 38 ¶ 212). Although Atherotech was concerned that making such a report could expose it to a DOJ investigation, it took Mintz Levin's advice and reported its competitors' payments of P&H fees. (Doc. 2-1 at 27–28 ¶ 118–21).

On or before September 7, 2012, the Department of Justice began to investigate Atherotech's payments of P&H fees for violation of the federal False Claims Act, 31 U.S.C. §§ 3729–3730, and the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. (Doc. 2-1 at 21 ¶¶ 78–79, 28 ¶ 122). Despite the ongoing investigation, Atherotech continued to make P&H fee payments. (*See id.* at 28 ¶ 126). Mintz Levin never advised Atherotech to stop making those payments. (*Id.* at 29 ¶ 128).

In 2014, the U.S. Department of Health and Human Services, Office of the Inspector General ("OIG") issued a "Special Fraud Alert: Laboratory Payments to Referring Physicians." (Doc. 2-1 at 26 ¶ 110). In the Fraud Alert, the OIG stated that it had "become aware of arrangements under which clinical laboratories are providing remuneration to physicians to collect, process, and package patients' specimens." Office of Inspector General, Special Fraud Alert: Laboratory Payments to Referring Physicians 3 (2014), https://oig.hhs.gov/fraud/docs/alertsan

dbulletins/2014/OIG_SFA_Laboratory_Payments_06252014.pdf. The OIG acknowledged that not all P&H fee payments would violate federal law, but explained:

> The anti-kickback statute is implicated when a clinical laboratory pays a physician for services. Whether an actual violation of the statute occurs depends on the intent of the parties—the anti-kickback statute prohibits the knowing and willful payment of such amounts if even one purpose of the payment is to induce or reward referrals of Federal health care program business. This is true regardless of whether the payment is fair market value for services rendered. The probability that a payment is for an illegitimate purpose is increased, however, if a payment exceeds fair market value or if it is for a service for which the physician is paid by a third party, including Medicare.

*Id.* at 4.

In July 2014, Atherotech apparently stopped paying P&H fees. (Doc. 2-1 at 29 ¶¶ 134–35). In March 2016, Atherotech and Holdings filed for bankruptcy. (*Id.* at 16–17 ¶ 40). The bankruptcy court appointed Mr. Reynolds as the Chapter 7 trustee for both companies. (*Id.* at 16 ¶ 41). In the bankruptcy case, Mintz Levin filed a claim for $181,397.99 in unpaid fees and expenses. (*Id.* at 29 ¶ 133). In addition, the U.S. government, "by and through two relators," has filed claims for $26.4 million based on Atherotech's payment of P&H fees. (*Id.* at 29 ¶ 132).

In March 2018, Mr. Reynolds filed suit in state court, asserting against Mintz Levin: (1) unjust enrichment; (2) negligence; and (3) "objection to Mintz

Levin's claim."[2]  (Doc. 2-1 at 37–39).  After the case was removed to federal court, this court severed the claims against Mintz Levin from the claims against the other defendants.  (Doc. 1).  Mintz Levin has moved to dismiss all of the claims against it.  (Doc. 3).

**II. DISCUSSION**

Typically, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    a.    <u>Count Eleven</u>

Mr. Reynolds concedes that Count Eleven does not satisfy federal pleading standards.  (Doc. 10 at 21).  Accordingly, the court **GRANTS** the motion to dismiss Count Eleven and **DISMISSES** Count Eleven **WITHOUT PREJUDICE**.

---

[2] Mr. Reynolds asserted numerous other claims against numerous other defendants, but none of those remain a part of this case.

b. Count Twelve

Mintz Levin seeks to dismiss Count Twelve—the legal malpractice claim—on various grounds. (Doc. 3). At the dismissal stage, the court finds Mintz Levin's arguments unpersuasive and will not address them point by point. The court finds that Mr. Reynolds has alleged sufficient facts to state a plausible legal malpractice claim.

The Alabama Code provides a statutory cause of action for legal malpractice, which it calls "legal service liability actions." Ala. Code § 6-5-573 ("There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."); *see also id.* § 6-5-572(1) ("A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future.").

Under that statutory cause of action, a plaintiff asserting a legal malpractice claim must prove the same elements as in a typical negligence action:

> a duty, a breach of that duty, an injury, that the breach was the proximate cause of the injury, and damages. Additionally, in a legal malpractice case, the plaintiff must show that but for the defendant's negligence he would have recovered on the underlying cause of action, or must offer proof that the outcome of the case would have been different.

*Indep. Stave Co. v. Bell, Richardson & Sparkman, P.A.*, 678 So. 2d 770, 772 (Ala. 1996) (citations and alterations omitted); *see also* Ala. Code § 6-5-572(4) (stating that a generalist breaches the standard of care if its failure to comply with that standard "proximately causes the injury or damages").

Although Mr. Reynolds' allegations are vague and somewhat tenuous, he has alleged that, as a general practitioner of the law, Mintz Levin owed him a duty to provide reasonable care, *see* Ala. Code. § 6-5-572(3)(a); that it breached that duty by either advising Atherotech to violate the law or failing to advise Atherotech to stop violating the law; that the breach caused Atherotech damages in the form of attorneys' fees paid to Mintz Levin; and that but for the breach, Atherotech would not have suffered those damages. At this stage, those allegations are just sufficient to survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 678. The court **DENIES** the motion to dismiss Count Twelve.

c. Count Thirteen

In Mintz Levin's motion to dismiss, it sought dismissal of Count Thirteen on several grounds. (Doc. 3 at 31). In its reply brief, however, it indicates that its only remaining ground supporting dismissal is if the court dismisses Counts Eleven and Twelve. (*See* Doc. 11 at 12–13). Because the court is not dismissing Count Twelve, the court also **DENIES** the motion to dismiss Count Thirteen.

d. <u>Amendment</u>

In his response to the motion to dismiss and at the hearing, Mr. Reynolds informally requested leave to amend his complaint. (Doc. 10 at 21). Because the time to amend as a matter of course has passed, Mr. Reynolds must seek the court's permission to amend. *See* Fed. R. Civ. P. 15(a). Under Federal Rule of Civil Procedure 15(a)(2), the court must "freely give leave [to amend] when justice so requires." A counseled plaintiff should seek leave to amend in a motion, "set[ting] forth the substance of the proposed amendment or attach[ing] a copy of the proposed amendment." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018). "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (quotation marks omitted).

The court cannot determine whether amendment is proper without seeing the substance of the proposed amendments. Mr. Reynolds must file a motion to amend, attaching to the motion his proposed amended complaint. The complaint as it currently stands includes facts, defendants, and claims that the court has already severed from this case. To aid the court in evaluating whether justice requires permitting him to amend his complaint, the proposed amended complaint

must omit any facts, defendants, and claims that are related only to the severed cases.

## III. CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** Mintz Levin's motion to dismiss the complaint. The court **GRANTS** the motion and **DISMISSES** Count Eleven **WITHOUT PREJUDICE**. The court **DENIES** the motion as to Counts Twelve and Thirteen.

The court will permit Mr. Reynolds to file a motion to amend the complaint within 14 days of the issuance of this memorandum opinion and order. The proposed amended complaint should omit any facts, defendants, and claims that are related only to the severed cases.

**DONE** and **ORDERED** this February 25, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE